IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMANTHA CARTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-1554-N-BN |
| | § | |
| H2R RESTAURANT HOLDINGS, LLC, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. *See* Dkt. No. 102.

On October 13, 2017, Plaintiff Samantha Carter filed her Third Motion for Leave to File Amended Complaint. *See* Dkt. No. 89. The Court subsequently ordered the parties to meet and confer and file a joint status report on the motion, as required by the Court's Standing Order on Non-Dispositive Motions. *See* Dkt. No. 103 at 2.

Defendant H2R Restaurant Holdings LLC has since filed this report. The report explains that the parties continue to disagree on whether Ms. Carter is entitled to amend her complaint.

The Court then entered a briefing schedule with respect to this motion to amend. Ms. Carter filed her supporting brief. Defendants filed their respective replies. And Ms. Carter filed her reply shortly thereafter.

## Background

Ms. Carter has filed a motion for leave to amend her complaint. In her original complaint, Ms. Carter brought a claim for negligence against H2R Restaurant Holdings, LLC, Trinity Event Staffing, John Dyess, and Chris Short based on the following facts.

1. Trinity is a staffing company that was charged with providing H2R the personnel that it needed to cater an event at a mansion in Dallas, Texas on October 20, 2012. Trinity subsequently hired Ms. Carter to help cater the event.

2. At the event, Trinity personnel directed Ms. Carter to cook macaroni and cheese on a butane stove in a covered garage.

3. The butane cannister would not stay in place. Event personnel, hired by Trinity and possibly by other defendants, folded aluminum pans together to hold the cannister in place.

4. Ms. Carter was instructed to continue preparing the macaroni and cheese on the modified butane stove.

5. The stove subsequently exploded, Ms. Carter was seriously injured, and Defendants refused to call 9-1-1 or otherwise seek medical personnel to help.

After unsuccessfully seeking to amend her complaint on multiple occasions, *see* Dkt. Nos. 18, 65, & 83, Ms. Carter filed her Third Motion for Leave to File Amended Complaint [Dkt. No. 89] on October 13, 2016.

The proposed amended complaint "maintains the counts and allegations against the same defendants from the original complaint" and adds additional facts and details

2

supporting these claims. Dkt. No. 89 at 1.

Among other details about the events leading up to and following the butane gas explosion, the amended complaint includes new allegations that:

1.  Upon arriving at the event, Ms. Carter "was informed that ... she was being demoted from Chef to Cook because of the color of her Chef Jacket." Dkt. No. 89-1 at 4.

2.  Mr. Dyess modified the butane stove even though Mr. Short and Mr. Dyess agreed that he did so in a way that it is not "supposed to be done." *Id.* at 4.

3.  No one at the event called 9-1-1 for about at least two hours after she was injured in the explosion.

The amended complaint also includes new claims for violations of international law and employment discrimination and claims for new forms of relief.

For the reasons explained and to the extent below, the undersigned concludes that Plaintiff's motion should be granted in part and denied in part.

## Legal Standards

Because the standards by which the Court evaluates a motion for leave to amend the pleadings vary according to whether the motion was filed before or after the deadline established in the scheduling order, the Court must determine, as an initial matter, whether the motion was filed before or after the deadline. *See, e.g.*, *Orthoflex, Inc. v. Thermotek, Inc.*, Nos. 3:11-cv-8700-D & 3:10-cv-2618-D, 2011 WL 4398279, at *1 (N.D. Tex. Sept. 21, 2011) ("Motions for leave to amend are typically governed by Rule 15(a)(2), or, if the time to seek leave to amend has expired, by Rule 16(b)(4) and

3

then by Rule 15(a)(2).").

When the deadline for seeking leave to amend pleadings has expired, the Court must first determine whether to modify the scheduling order under the Federal Rule of Civil Procedure 16(b)(4) good cause standard. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). To meet the good cause standard, the party must show that, despite her diligence, she could not reasonably have met the scheduling order deadline. *See id.* at 535. The Court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "'(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) [the] potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Id.* at 536 (quoting *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)). If the movant satisfies Rule 16(b)(4)'s requirements, the court must then determine whether to grant leave to amend under Federal Rule of Civil Procedure's 15(a)(2)'s more liberal standard." FED. R. CIV. P. 15(a)(2); *see S&W Enters.*, 315 F.3d at 536.

When the party is not subject to an expired deadline for seeking leave to amend, Rule 15(a) requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). While leave to amend is not automatic, *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005), the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," *Dussouy*

*v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). The Court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994. But Rule 15(a) provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), and the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy*, 660 F.2d at 598; *accord Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile.").

## Analysis

I.    Ms. Carter's motion for leave to amend is subject to the standard articulated by Federal Rule of Civil Procedure 15(a)(2).

Trinity presumes that Ms. Carter's motion should be judged under the Federal Rule of Civil Procedure 16(b)(4) good cause standard because it is purportedly "[l]ate." Dkt. No. 153 at 2. The undersigned disagrees.

Rule 16(b)(4) only applies to a motion for leave to amend when amending the pleading in question would require the Court to modify the amendment deadline in its scheduling order. *See* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Rule 16(b)(4) does not apply where the

moving party filed her motion to amend before the Court entered the scheduling order. *See S&W Enters.*, 315 F.3d at 535 (noting that "Federal Rule of Civil Procedure 16(b) governs amendment of pleadings <u>once a scheduling order has been issued by the district court</u>." (emphasis added)). Ms. Carter filed the pending motion for leave to amend before the Court entered the scheduling order. She also previously moved for leave to amend her Complaint on multiple other occasions; those attempts were simply unsuccessful for reasons unrelated to the merits.

The Court should evaluate Ms. Carter's motion for leave to amend under Rule 15(a)'s more liberal standard. Rule 15(a) requires the Court to grant her motion to amend freely "when justice so requires." FED. R. CIV. P. 15(a)(2). As explained above, the Court should grant her motion "unless there is a substantial reason to deny leave to amend," *Dussouy*, 660 F.2d at 598; *accord Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 322 (5th Cir. 2009), based on a variety of factors. These factors include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994.

II.   **The Court should grant Ms. Carter's motion for leave to amend to add new <u>allegations to support her existing claims.</u>**

As Ms. Carter explains in her supporting brief and in her motion, "[t]he new complaint maintains the counts and allegations against the same defendants from the original complaint" but adds additional facts that she has discovered or ascertained

6

through the course of this proceeding. Dkt. Nos. 89 at 1; 142 at 1.

The undersigned sees no reason why Ms. Carter should not be allowed to amend her complaint to this extent. "There is no evidence of any undue delay, bad faith, or dilatory motive on Plaintiff's part." *Palomino v. Wells Fargo Bank, N.A.*, No. 6:15-cv-375-RWS-KNM, 2017 WL 989300, at *5 (E.D. Tex. Feb. 17, 2017). And "Defendants will not be prejudiced by permitting amendment at this early stage of the case." *Id.*

Trinity appears to argue that there has been an undue delay because Plaintiff has not shown specifically why she has not "timely" moved for leave to amend. *See* Dkt. No. 153 at 3. It notes that "[t]he incident that is the basis of Plaintiff's suit occurred more than four years ago." *Id.*

Defendants are right about the timing of the incident giving rise to Plaintiff's claim. But the undersigned does not agree that Ms. Carter had an obligation to file her amended complaint with any additional expediency in light of the current state the case. Defendants have not and cannot seriously contend that they will be prejudiced by Plaintiff's motion for leave to file an amended complaint to the extent that Plaintiff amends to add further detail to the allegations underlying her claims. *See Crossland v. Canteen Corp.*, 711 F.2d 714, 729 (5th Cir. 1983) (placing the burden to establish prejudice on the party objecting to the motion for leave to amend). The deadline for discovery is more than a year out. If anything, the additional details in the complaint arguably helps the parties conduct more targeted discovery. As such, the fact that Plaintiff could have filed this motion earlier is not sufficient to deny Plaintiff's motion.

*See Deakyne v. Comm'rs. of Lewes*, 416 F.2d 290, 300 n.19 (3rd Cir. 1969) ("We do not believe delay alone is a sufficient measure of prejudice.").

III.    **But the Court should deny Ms. Carter's motion for leave to amend to add new <u>claims that necessarily fail as a matter of law.</u>**

Ms. Carter appears to bring claims for Defendants' alleged violations of the Universal Declaration of Human Rights, the International Convention on the Elimination of Racial Discrimination, and Title VII of the Civil Rights Act.

As an initial matter, Trinity's apparent argument that it would be prejudiced by adding these claims is unpersuasive. *See* Dkt. No. 153 at 2-3 (arguing that "Plaintiff has attempted to substantively change her pleading by alleging additional facts and a cause of action for discrimination," though only citing a Texas Supreme Court case to support this conclusion). "A party may be prejudiced by a Court's grant of a motion for leave to amend a complaint when the amendment introduces a new claim or factual allegation at a point in the litigation where the nonmoving party would be unable to fully respond to the new information without additional time, discovery, or other preparation." *Broadcom Corp. v. NXP Semiconductors N.V.*, No. 8:13-cv-829-MRP-MAN, 2014 WL 12577095 (C.D. Cal. March 12, 2014) (citing *Roberts v. Ariz. Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187-88 (9th Cir. 1987)); *see also Taylor v. City of Shreveport*, No. 11-cv-317, 2011 WL 4954615, at *2 (W.D. La. 2011) (granting leave to amend because "[n]othing of significance has happened in the case since the period [in which Plaintiff had an automatic right to amend] expired that would justify denying leave to amend" and the

Court's "discretion to deny leave is limited at the early stages of a case"). The case is still in its early stages, as explained above. And, even if it were not, the facts underlying these claims are largely based on the same sequence of events that underlie her existing claims.

But Defendants' apparent argument that adding these claims would be futile is more convincing – at least with respect to some of her proposed new claims. *See* Dkt. Nos. 152 at 2; 153 at 3 (each arguing that "Plaintiff has certainly not provided enough facts or information to show that a claim for discrimination is even plausible").

When the denial of leave to amend is based on grounds of futility, the Court applies the Federal Rule of Civil Procedure 12(b)(6) standard, under which ""all well-pleaded facts are viewed in the light most favorable to the plaintiff" and, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which requires the complaint to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (internal quotation marks omitted); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010). If "[t]he allegations are thus enough to raise a right to relief above the speculative level" and the plaintiff's "claim for relief is plausible on its face," the amendment is not futile. *Thomas*, 832 F.3d at 593 (internal quotation marks omitted); *accord Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir.) ("Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted."), *cert. denied sub*

9

*nom. Legate v. Collier*, 137 S. Ct. 489 (2016), *reh'g denied*, No. 16-5915, 2017 WL 670685 (U.S. Feb. 21, 2017).

"But the Court often looks warily at efforts to preempt an analysis of a new cause of action in the context of a dispositive motion by denying leave in the Rule 15(a) context on the basis of futility. The Court generally only denies a proposed amendment as futile where the cause of action is not, in fact, newly pleaded or where a new cause of action fails as a matter of law – that is, cannot be stated, rather than simply possibly has not been sufficiently stated in the proposed amended complaint." *Barbour v. City of Forney*, No. 3:15-cv-90-B, 2015 WL 4094005, at *4 (N.D. Tex. June 17, 2015) (citation omitted), *rec. accepted*, 2015 WL 4113571 (N.D. Tex. July 7, 2015); *accord Taylor*, 2011 WL 4954615, at *1-*2. *See also Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) (explaining that courts generally deny leave for futility "because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint").

A. The Court should deny Ms. Carter's motion for leave to amend to add a <u>new claim for deprivation of human rights.</u>

Plaintiff first seeks to bring a new claim for the deprivation of human rights. She argues that Defendants deprived her of human rights "by not providing her access to immediate medical treatment and preventing others from providing her with medical treatment by [failing to] call[] 9-1-1," Dkt. No. 89-1 at 10. In her reply, she specifically contends that Defendants violated the Universal Declaration of Human Rights (the "UDHR"). She notes that the UDHR states that "[e]veryone has the right

10

to ... favorable conditions of work" and that the explosion and Defendants' responses to the explosion demonstrate that she was deprived of this right. Dkt. No. 155 at 2 (quoting Universal Declaration of Human Rights, G.A. Res. 217 A, U.N. GAOR, 3d Sess., art. 23, Dec. 10, 1948).

Plaintiff's claim fails as a matter of law. "The Universal Declaration of Human Rights is 'a statement of principles' and not a treaty or international agreement imposing legal obligations." *Fountain v. Thaler*, No. 6:13-cv-958, 2015 WL 5168775, at *18 (E.D. Tex. Sept. 2, 2015) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004)). "Consequently, the Declaration is non-binding and provides no private right of action." *Id.* (citing *U.S. v. Chatman*, 351 F. App'x. 740, 741 (3rd Cir. 2009)).

Plaintiff cannot state a claim for violation international human rights under any set of facts. The Court should thus deny her motion for leave to amend to add this claim.

    B.    The Court should deny Plaintiff's motion for leave to amend to add a new claim for violation of the International Convention on the Elimination of <u>All Forms of Racial Discrimination.</u>

Ms. Carter next appears to contend that Defendants failed to timely call 9-1-1 after the explosion due to her race, and by so doing, violated the International Convention on the Elimination of All forms of Racial Discrimination (the "ICERD"). Article I of the ICERD explains that "the term 'racial discrimination' shall mean any distinction, exclusion, restriction or preference based on race, color, descent, or national or ethnic origin which has the purpose of nullifying or impairing the recognition, enjoyment or exercise, on an equal footing, of human rights and fundamental freedoms

in the political, economic, social, cultural or any other field of public life." International Convention on the Elimination of All Forms of Racial Discrimination, art. 1, Dec. 21, 1965, 660 U.N.T.S. 19.

This claim also fails as a matter of law. The ICERD is an international treaty. It "does not become domestic law and cannot support a private right of action, unless Congress has enacted implementing statutes or the treaty is self-executing." *Funayama v. City of Philadelphia*, No. 13-cv-2667, 2013 WL 6159279, at *3 (E.D. Pa. Nov. 25, 2013) (citing *Medellin v. Texas*, 552 U.S. 491, 505 (2008)). And "[w]hen the United States ratified the ICERD, it specifically declared that the convention was not self-executing." *Id.* (citing 140 Cong. Rec. S7634-02, 1994 WL 282789; *Sarei v. Rio Tinto. PLC*, 671 F.3d 736, 368 (9th Cir. 2011) *vacated on other grounds sub nom. Rio Tinto PLC v. Sarei*, 133 S.Ct. 1995 (2013)).

Plaintiff cannot state a claim for violating the ICERD under any set of facts. The Court should thus deny her motion for leave to amend to add this claim.

C.    But Plaintiff's motion should be granted to allow her a chance to properly <u>plead her proposed Title VII claim.</u>

By alleging that Defendants discriminated against her on the basis of race, Ms. Carter also appears to invoke Title VII of the Civil Rights Act of 1965. The undersigned acknowledges that Ms. Carter has not explicitly referred to Title VII in her amended complaint. But the federal rules "do not countenance dismissal of a complaint for [an] imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346, 347 (2014) (explaining that plaintiffs do not have

to invoke 42 U.S.C. § 1983 expressly to state a Section 1983 claim). That rationale has even more force in this case, as the Court "must construe the pleadings of pro se litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

Title VII claims are analyzed through the framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Under that framework, a plaintiff must establish a prima facie case of discrimination before the case may proceed. *Id.* A plaintiff establishes a prima facie case of racial discrimination by showing that she was (1) a member of a protected class; (2) qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of her protected class or that others outside of her protected class and similarly situated were treated more favorably. *Id.* at 557.

But the Fifth Circuit has cautioned that a plaintiff is not required to make a showing of each prong of the prima facie test at the pleading stage. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)). The question on initial screening is simply whether Plaintiff's pleadings sufficiently state that she suffered a discriminatory employment action or actionable retaliation. *See Swierkiewicz*, 534 U.S. at 512-13.

Plaintiff fails to meet this burden – at least as the amended complaint is presently written.

The amended complaint refers to two incidents that could arguably constitute

an "adverse employment action" – that is, a "materially adverse change in the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 53 (2006). The first is her demotion from "Chef" to "Cook." The second is Defendants' refusal to call 9-1-1 after the butane oven exploded and Plaintiff was caught on fire. While Defendants' purported refusal to call 9-1-1 during an emergency might not be traditionally thought of as an adverse employment action, allowing an employee to be severely injured arguably constitutes a constructive discharge. *See Brandon v. Sage Corp.*, 61 F. Supp. 3d 632, 644 (W.D. Tex. 2014) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) ("'To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.'")).

But, aside from a few conclusory allegations of race-based animus, Plaintiff's amended complaint does not contain facts suggesting that any adverse employment action that Plaintiff suffered was due to race. For instance, she does not plead any "specific objective incidents of racial discrimination, for example, racial comments or treatment different from similarly situated employees of another race." *Thornton v. Dallas IASD*, No. 13-cv-3012-P, 2014 WL 46398, at *4 (N.D. Tex. Jan. 6, 2014). In fact, as noted in her own proposed amended complaint, Chef Jeff Quals explained that he demoted her "because of the color of her [c]hef [j]acket." Dkt. No. 89-1 at 4. She nevertheless appears to ask the Court to infer race-based discrimination based on Defendant's alleged mistreatment of her. This is not sufficient for the undersigned to

conclude that Plaintiff states a claim for race-based discrimination under Title VII.

Defendants contend, without any further explanation, that this claim also fails because "Plaintiff has failed to establish that she performed the conditions precedent to pursuing [a Title VII] claim." Dkt. Nos. 152 at 3-4; 153 at 2. The undersigned presumes that Defendants are referring to the fact that Plaintiff has not pleaded or otherwise demonstrated that she has received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC").

The Fifth Circuit has explained that receipt of a right-to-sue letter is a "condition precedent subject to equitable modification." *Pinkard v. Pullman-Standard, a Div. Of Pullman, Inc.*, 678 F.2d 1211, 1216 (5th Cir. 1982). Plaintiff's failure to plead receipt of a right-to-sue letter suggests that Plaintiff has not exhausted her administrative remedies. And, if that is indeed the case, Plaintiff's Title VII claim would be futile.

The undersigned is nevertheless not yet prepared to prohibit Plaintiff from addressing these deficiencies by denying her motion for leave to amend. Generally, courts shall only deprive a pro se litigant of an opportunity to amend her complaint at least once where she has already pleaded her "best case." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *see also Dorsey v. Mgmt. & Training Corp.*, No. 5:16-cv-40-DCB-MTP, 2016 WL 6892491, at *2 (S.D. Miss. Nov. 22, 2016) (dismissing action without prejudice for failure to plead receipt of a right-to-sue letter). After all, "'a court ordinarily should not dismiss the complaint except after affording every opportunity [for] the plaintiff to state a claim upon which relief [can] be granted.'" *Hitt v. City of*

15

*Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (quoting *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955)); *see also Taylor*, 2011 WL 4954615, at *1-*2 (granting leave to amend because "[n]othing of significance has happened in the case since the period [in which Plaintiff had an automatic right to amend] expired that would justify denying leave to amend" and the Court's "discretion to deny leave is limited at the early stages of a case"). Despite her several attempts to file a motion for leave to amend, Plaintiff has yet to amend her complaint. She may very well allege facts that cure the errors the undersigned identifies with her claim – namely that (1) she has not pleaded facts suggesting that she suffered any adverse employment action due to race and (2) she has not claimed to receive a right to sue letter. *See Dorsey*, 2016 WL 6892491, at *2 (dismissing a Title VII claim without prejudice based on plaintiff's failure to plead receipt of a right-to-sue letter "[b]ecause the dismissal is based on failure to exhaust administrative remedies").

IV.    The Court should deny Plaintiff's motion for leave to amend to add claims for <u>damages for which she cannot recover under any set of facts.</u>

Finally, Defendants appear to argue that Plaintiff's request for "treble damages, discrimination damages, loss of consortium damages, loss of conjugal fellowship damages, injunctive relief[,] or declaratory relief" is futile. Dkt. Nos. 152 at 2; 153 at 4. They summarily contend, without explanation, that Plaintiff's causes of action cannot entitle her to these forms of relief as a matter of law. *See* Dkt. Nos. 152 at 2; 153 at 4. The undersigned considers each of Plaintiff's specific damages requests below.

Plaintiff seeks treble damages on her negligence claim and potential Title VII

claim. Absent some statutory basis for treble damages, plaintiffs are not typically awarded treble damages. *See EMC Nat. Life Co. v. Employee Benefits Systems, Inc.*, 827 F. Supp. 2d 979, 983 n.3 (S.D. Iowa 2011) ("Black's Law Dictionary 449 (9th ed. 2009) defines treble damages as '[d]amages that, by statute, are three times the amount of actual damages that the fact-finder determines is owed.'"). There does not appear to be any statutory authority to support Plaintiff's request for treble damages on her negligence claim or her potential Title VII claim. Amending the complaint to include a request for treble damages would be futile.

Plaintiff seeks "discrimination damages" pursuant to 42 U.S.C. § 1983. Plaintiff is only entitled to damages under Section 1983 if she has brought a cause of action under this statute. She has not, and because there is nothing to suggest that Defendants were acting under the color of law, nothing in her complaint or proposed amended complaint suggests that she could. Amending the complaint to include a request for "discrimination damages" under 42 U.S.C. § 1983 would be futile.

Plaintiff seeks damages for both "loss of conjugal fellowship" and "loss of consortium." Courts do not appear to recognize damages based on loss conjugal fellowship – at least separate from a claim or request for damages for "loss of consortium." *See Stanford v. McLean Trucking Co.*, 506 F. Supp. 1252, 1258 (E.D. Tex. 1981) ("The term 'consortium' is defined by Black's Dictionary as 'conjugal fellowship of husband and wife, and the right fo each to the company, cooperation, affection and aid of the other in every conjugal relation.'"). Plaintiff would not be able to recover damages for either "loss of conjugal fellowship" or "loss of consortium" in any event.

Texas only permits recovery for these kinds of losses where the wrongdoer caused direct physical injury to the plaintiff's spouse or family member. As the Texas Supreme Court explains in the context of consortium, where one spouse is physically injured by the defendant and the other is not, "the impaired spouse would have the exclusive right to recover the normal damages associated with ... bodily injuries, medical expenses, pain and suffering, loss of earnings, et cetera [and] [t]he deprived spouse would have the right to bring an action for loss of consortium and seek recovery on the basis of the harm to the intangible or sentimental elements." *Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex. 1978); *accord Glasscock v. Armstrong Cork Co.*, 946 F.2d 1085, 1090 (5th Cir. 1991) (citing *Cornelison v. Aggregate Haulers, Inc.*, 777 S.W.2d 542, 549 (Tex. Civ. App. 1989) ("Loss of consortium damages may be inferred from evidence showing the nature and extent of a spouse's injuries.")). Plaintiff alleges that she has suffered actual bodily injuries – not that she is suffering because of any direct physical injury to a loved one. Amending the complaint to include a request for damages based on loss of conjugal fellowship, loss of consortium, or both, would be futile.

Plaintiff seeks "[i]njunctive relief sufficient to protect Plaintiff from any harassment[] and intimidation now or in the future [from] the defendants." Dkt. No. 89-1 at 14. "Courts have discretion under Title VII to award a victorious plaintiff back pay, reinstatement, and 'any equitable relief as the court deems appropriate.'" *Ross v. Double Diamond, Inc.*, 672 F. Supp. 261, 276 (N.D. Tex. 1987) (quoting 42 U.S.C. § 2000-5(g) (1976)). This could include injunctive relief preventing Defendants from "harass[ing] and intimidat[ing]" Plaintiff should she properly plead a Title VII claim

and show that she is entitled to reinstatement. After all, "[i]njunctive relief generally should be granted in Title VII cases unless there is no reasonable expectation that the discriminatory conduct will recur, or if the interim events have 'completely and irrevocably eradicated the effects of the alleged violation.'" *Id.* (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal citations omitted)). The undersigned has advised that Plaintiff should have a chance to properly plead her claim for Title VII. It is premature to determine that she is not entitled to a potential form of relief allowable under that claim. Amending the complaint to include a request for injunctive relief would not be futile.

Plaintiff seeks declaratory relief under 28 U.S.C. § 2202. Section 2202 provides that "[f]urther necessary or proper relief on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. It is premature for the undersigned to determine that Plaintiff is not entitled to declaratory judgment under any set of facts. Amending the complaint to include a request for declaratory relief would not be futile.

In summary, the undersigned concludes that Plaintiff's respective requests for treble damages, discrimination damages, loss of consortium damages, and loss of conjugal fellowship damages are futile and that her respective requests for injunctive relief and declaratory relief are not.

## Recommendation

The Court should grant in part and deny in part Plaintiff Samantha Carter's

Third Motion for Leave to Amend [Dkt. No. 89]. In particular:

1.   The Court should allow Plaintiff to amend her complaint to (a) add new facts to support her existing claims, (b) properly plead a Title VII claim by addressing the deficiencies identified, and (c) add claims for injunctive relief, declaratory relief, or both.

2.   The Court should not allow Plaintiff to amend her complaint to (a) add a claim for deprivation of human rights, (b) add a claim for violation of the International Convention on the Elimination of All forms of Racial Discrimination, or (c) add claims for treble damages, discrimination damages, loss of consortium damages, or loss of conjugal fellowship damages.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: April 3, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

21