IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMANTHA CARTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-1554-N-BN |
| | § | |
| H2R RESTAURANT HOLDINGS, LLC, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This case has been referred to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. *See* Dkt. No. 102.

On April 5, 2017, Plaintiff Samantha Carter served Defendants H2R Restaurant Holdings, LLC, John Dyess, and Chris Short (the "H2R Defendants") and Rad Staffing d/b/a Trinity Event Staffing ("Trinity"; collectively with the H2R Defendants, "Defendants") with her First Set of Interrogatories, Requests for Production, and Requests for Admission ("RFAs").

The H2R Defendants and Trinity each filed a Motion for Protective Order ("MPO"), asking the Court to protect them from complying with several of Ms. Carter's requests. *See* Dkt. No. 171 & 174.

In response, Ms. Carter filed two motions to compel in which she insists that Defendants respond to the requests at issue. *See* Dkt. No. 176 & 177. Defendants filed their respective responses to Ms. Carter's motions shortly thereafter.

The parties have not filed any other documents in connection with Defendants' respective Motions for Protective Order or Ms. Carter's motions to compel, and the deadlines to do so have passed.

For the reasons and to the extent explained below, the Court GRANTS IN PART and DENIES IN PART the H2R Defendants' Motion for Protective Order and Trinity's Motion for Protective Order and DENIES Plaintiff's Motions to Compel.

## Background

In her Amended Complaint, Ms. Carter brings claims for negligence and Title VII employment discrimination primarily based on the allegations summarized below:

1. On October 19, 2017, a Trinity representative sent Plaintiff Samantha Carter a text message asking if she was interested in accepting a temporary assignment as a chef at a catering event that would occur on the next day. She accepted.

2. She showed up at the event in a fuchsia-colored chef jacket. After she arrived, Chef Jeff Quals demoted her from "chef" to "cook," purportedly due to the color of her jacket. He then asked her to cook macaroni and cheese over a portable stove.

3. The fire heating the stove would not stay lit. After it went out for the third or fourth time, Defendant John Dyess performed a make-shift fix. Defendant Chris Short, Mr. Dyess's manager, acknowledged that this was not the proper way to fix the stove but concluded that it needed to be fixed this way. The stove later exploded, and Ms. Carter caught on fire. 9-1-1 was not called until about two

hours later.

In response to Ms. Carter's First Set of Interrogatories, Requests for Production, and Requests for Admission, Defendants filed their motions for protective order. The H2R Defendants appear to argue that they should not be required to answer all of Ms. Carter's interrogatories because she has exceeded the limit allowed by the Court's Amended Scheduling Order and Federal Rule of Civil Procedure 33. The Amended Schedule Order explains that "[t]he presumptive limit of ... 25 interrogatories per party will apply in this case." *See* Dkt. No. 125 at 8 (citing FED. R. CIV. P. 33(a)(1)). And, as the H2R Defendants note, "Plaintiff has propounded 64 Interrogatories to [them]." Dkt. No. 171 at 1.

The H2R Defendants also purport that it is not clear to whom Ms. Carter has directed her interrogatories because "the full set of Plaintiff's First Set of Interrogatories appear to be directed to each Defendant, but then addresses request[s] to William Hyde, a nonparty." *Id*.

And all Defendants contend that they should be protected from complying with several of Ms. Carter's requests because the requests are abusive, served only to harass them, or both.

The H2R Defendants specifically object to the following requests:

Interrogatory No. 17: Mr. Dyess[, what] branch of the Ku Klux Klan in Texas are you a member of? What is your position?

Interrogatory No. 18: Mr. Dyess, did you torture animals as a child?

Interrogatory No. 25: Did Defendants in any capacity make a campaign contribution to Judge Tonya Parker anytime [sic] after October 20, 2012?

Interrogatory No. 31: Mr. Hyde[,] are you or have you ever been a financial contributor to Parkland Hospital?

Interrogatory No. 37: Did Defendants pay a lump of cash to the EMT's to not complete an EMT report?

Interrogatory No. 47: Mr. Dyess, do you have a psychotic disorder?

Interrogatory No. 48: Mr. Hyde, Mr. Dyess, have either of you ever called a black person, [the N-Word]?

Interrogatory No. 61: Mr. Hyde, has anyone ever called you by the name Dr. Jekyll? And if so was it Kent Rathbun?

RFA No. 12: Admit or deny that Defendants are [S]atanists.

RFA No. 29: Admit or deny that Mr. Hyde sleeps perfectly well at night.

RFA No. 32: Admit or deny that you have children that are declared Colored, Black American or African American in your household.

RFA No. 44: Admit or deny that human life has no value.

*See id.* at 2-5; Dkt. No. 166-1 at 14-17.

And Trinity specifically objects to the following requests:

Interrogatory No. 17: What branch of the Ku Klux Klan in Texas are you a member of? What is your position?

Interrogatory No. 18: Do you train your employees to have compassion for the human life?

Interrogatory No. 25: Did Defendants make a campaign contribution to Judge Tonya Parker anytime [sic] after October 20, 2012?

RFA No. 10: Admit or deny that Defendant found an unexperienced practitioner of medicine from its party guests expecting that he would just simply sit by Plaintiff for an hour and eventually be there to pronounce the death of Plaintiff on the scene.

RFA No. 11: Admit or deny that Defendant and its employee were going to let Plaintiff die and operated in malversation on October 20, 2012.

4

RFA No. 12: Admit or deny that Defendants are [S]atanist[s].

RFA No. 13: Admit or deny Defendants made political campaign contributions since October 20, 2012.

RFA No. 14: Admit or deny Defendants shared Plaintiff's personal information to the Collin County Rape Crisis Center.

RFA No. 15: Admit or deny Defendants were aware that the Collin County Rape Crisis Center raised money from its contributors for the injury of Plaintiff and used it for their organizational purposes.

RFA No. 17: Admit or deny that Defendants thought this entire matter would go away.

RFA No. 18: Admit or deny that Plaintiff was the only black female and black person hired as a Chef and [d]emoted to [C]ook on October 20, 2012.

RFA No. 25: Admit or deny that Defendants plan to harm Plaintiff or have harmed her in any way to prevent her from pursuing this litigation.

Dkt. No. 174 at 2-4.

In her subsequently-filed motions to compel, Ms. Carter argues that she has not exceeded the number of interrogatories allowed because she "is entitled to 25 Interrogatories for each [defendant] not per case" and that the H2R Defendants are comprised of "three different parties." Dkt. No. 176 at 2.

She also argues that, even if they cause Defendants discomfort, Defendants must respond to the particular requests at issue because they are "direct statements on uncontroversial matters" that relate to Defendants' "motives ... and well established business practices," *id.* at 2, and because they have "not attempt[ed] to establish detailed reasons" as to why her requests are improper, *see* Dkt. No. 177 at 4.

Defendants respond that her motion to compel is premature because it was filed

before their deadline to respond to the discovery requests and because the Court had yet to rule on their respective motions for protective order.

## Legal Standards

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer an interrogatory under Federal Rule of Civil Procedure 33. *See* FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv). For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). And a party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of his objection to a request, and, if he does not, he waives the objection. *See Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004). A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party

asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").

Federal Rules of Civil Procedure Rules 26(b) and 26(c) have been amended, effective December 1, 2015. For the reasons that the Court has previously explained, the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr v. State Farm Mutual Automobile Insurance Company*, 312 F.R.D. 459, 463-69 (N.D. Tex. 2015). Rather, just as was the case before the December 1, 2015 amendments, under Rule 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See Crosby v. La Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). As amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

Rule 26(b)(1), as amended, provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in this action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The party seeking discovery, to prevail on a motion to compel or resist a motion for protective order, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in

opposition to the resisting party's showing. And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is subject to Rule 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *see generally Heller v. City of Dallas*, 303 F.R.D. 466, 475-77, 493-95 (N.D. Tex. 2014).

But the amendments to Rule 26(b) and Rule 26(c)(1) do not alter the basic allocation of the burden on the party resisting discovery to – in order to prevail on a motion for protective order or successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a discovery request would impose an undue burden or expense or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303 F.R.D. at 483-93.

Under Federal Rule of Civil Procedure 26(c), the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense. *See* FED. R. CIV. P. 26(c)(1). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (citations omitted); *see also E.E.O.C. v. BDO USA, L.L.P.*, __ F.3d __, No. 16-20314, 2017 WL 1746035, at *7 (5th Cir. May 4, 2017), as revised (May 8, 2017). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

As amended, Rule 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a

deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1).

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A).

Federal Rule of Civil Procedure 37(a)(5)(B)-(C) further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the

motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

Federal Rule of Civil Procedure 26(c)(3) provides that, in connection with a motion under Rule 26(c) for a protective order, Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses." FED. R. CIV. P. 26(c)(3).

## Analysis

I.  Ms. Carter shall re-serve her interrogatory requests on the H2R Defendants to <u>clearly delineate which questions each H2R Defendant must answer.</u>

The H2R Defendants first argue that Ms. Carter has issued more interrogatory requests than the Court allows for in the Amended Scheduling Order. They note that the Amended Scheduling Order explains that "[t]he presumptive limit of ... 25 interrogatories per party will apply in this case." Dkt. No. 125 (citing FED. R. CIV. P. 33(a)(1)). And Ms. Carter has issued 64 interrogatories to the H2R Defendants, who ask the Court to enter a protective order identifying which specific set of interrogatory requests to which they must respond. *See* Dkt. No. 171 at 4.

Ms. Carter counters that she "is entitled to 25 [i]nterrogatories for each respondent not per case." Dkt. No. 176 at 4 (citing FED. R. CIV. P. 33). As a result, she contends that she is entitled to serve a total of 75 interrogatories to the H2R Defendants because they constitute three distinct parties: H2R Restaurant Holdings, Mr. Dyess, and Mr. Short. *See id.*

Ms. Carter's explanation is only acceptable if she had intended to direct

particular sets of questions to particular parties – as opposed to requiring all of the H2R Defendants to answer all 64 interrogatories.

The way in which Ms. Carter has phrased the interrogatories suggests that she did not intend for every party to answer all of the interrogatories at issue – but it is not entirely clear. Many of her interrogatories are directed to one or more particular parties. *See* Dkt. No. 166-1 at 4-5 (directing Interrogatory No. 3 to "Mr. Dyess and Mr. Short" and Interrogatory 6 to "Mr. Dyess"). But others are not directed to any particular party or to a non-party, such as Mr. Hyde. *See id.* (directing Interrogatory No. 2 to Mr. Hyde and Interrogatory No. 13 to no particular party).

Regardless of Ms. Carter's intentions, by failing to unambiguously identify the set of interrogatories each of the H2R Defendants was required to answer, the H2R Defendants were understandably confused about whether Ms. Carter expected them to each respond to all 64 requests.

But, in light of Ms. Carter's status as a pro se litigant and her apparent attempt to comply with the Amended Scheduling Order's interrogatory limit, the Court DENIES the H2R Defendants' request for it to determine the specific interrogatories they must answer. *See Sec. & Exch. Comm'n v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (citing *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) ("[P]ro se litigant[s] [are] subject to less stringent standards than [those] represented by counsel.")).

The Court, instead, ORDERS Ms. Carter to re-issue her interrogatory requests to clearly delineate the set of 25 interrogatory requests that each Defendant must answer, subject to the limitations described below.

13

II.     Defendants are protected from answering discovery requests that are not <u>relevant to any party's claims or defenses.</u>

Ms. Carter has propounded discovery requests in which she asks the H2R Defendants whether they made campaign contributions to Judge Tonya Parker (Interrogatory No. 25), whether Mr. Hyde is called Dr. Jekyll (Interrogatory No. 61), whether they are Satanists (RFA No. 12), and whether they have "Colored, Black American or African American" children in their households (RFA No. 32). She also asks Trinity whether it has made campaign contributions to Judge Parker (Interrogatory No. 25 and RFA No. 13) and whether it is a Satanist (RFA No. 12).

Ms. Carter contends that her requests speak to Defendants' general intent. *See* Dkt. No. 177 at 3.

The Court disagrees. Defendants' contributions to a state court judge not involved in this case, potential religious beliefs, and potential nick names do not at all relate to Ms. Carter's allegations that Defendants neglected their duties, discriminated against her, or both. Neither does the racial make-up of their families.

In light of the Court's independent obligation to limit proposed discovery that is not "relevant to any party's claim or defense and proportional to the needs of the case," *see* FED. R. CIV. P. 26(b), for good cause, the Court GRANTS Trinity's motion as to Interrogatory No. 25 and RFA Nos. 12 & 13 and the H2R Defendants' motion as to Interrogatory Nos. 25 & 26 and RFA Nos. 12 & 32.

III.    Defendants are protected from answering discovery requests that might be <u>relevant to her claims but not proportional to the needs of the case.</u>

Ms. Carter has propounded discovery requests in which she asks the H2R

Defendants about their or their employees' involvement with the Ku Klux Klan (Interrogatory No. 17) and whether they tortured animals as a child (Interrogatory No. 18), have a psychotic disorder (Interrogatory No. 47), use the N-word (Interrogatory No. 48), and believe that "human life has no value" (RFA No. 44). She also asks Trinity "[what] branch of the Ku Klux Klan [it is] a member of" and what its position in the Klan is (Interrogatory No. 17), whether it trains its employees to have compassion for human life (Interrogatory No. 18), whether it found an unlicensed medical practitioner who it expected to "simply sit by Plaintiff for an hour and eventually be there to pronounce the death of Plaintiff on the scene" (RFA No. 10), and whether it intended to "let Plaintiff die" (RFA No. 11).

These requests are arguably relevant because, as Ms. Carter notes, they relate to Defendants' potential "motives" and "business practices." Dkt. No. 177 at 2. In particular, they appear to relate to traits or practices that make Defendants more or less likely to engage in racial discrimination or to neglect Ms. Carter's injuries, both of which are at issue in this case.

But the relevant information that Ms. Carter hopes to gain from these requests does not justify the abusive manner in which she phrases them.

Ms. Carter appears to contend that, even if her questions embarrass Defendants, Defendants must still answer them because they are at issue in this case due to Defendants' purported wrongdoing. *See id.* at 6-7.

But Rule 26(b)(1) only allows parties to obtain discovery that is both "relevant to any claim or defense and proportional to the needs of the case." FED. R. CIV. P.

26(b)(1). These requests are not "proportional to the needs of the case" since Ms. Carter needlessly used abusive means to elicit the relevant information she seeks.

By way of example, it is proper for Ms. Carter to ask about the training that Defendants' employees may have had as to how to respond to an emergency. But this does not give Ms. Carter license to use the discovery process to insinuate that Defendants' employees lack "compassion for human life." *See* Dkt. No. 177, Ex. A at 6 ("Do you train your employees to have compassion for human life?").

Likewise, it is proper for Ms. Carter to ask questions to establish that Defendants may have had a pattern and practice of racial discrimination. But she cannot, without a basis to do so, ask questions that presume that Defendants are officials in the Ku Klux Klan, *see id.* ("What branch of the Ku Klux Klan are you a member of? What is your position?"), or that require Defendants to respond to her unsubstantiated speculation that they may use the N-word, Dkt. No. 166-1 at 8 ("Mr. Hyde, Mr. Dyess, have either of you ever called a black person, [the N-word]?").

And it may be proper for Ms. Carter to ask Defendants about a pattern of neglect or indifference in the face of an emergency. But, without basis to do so, she cannot use discovery to ask Mr. Dyess questions about whether he has "torture[d] animals as a child," *id.* at 6, or whether he has a "psychotic disorder," *id.* at 8.

For these reasons, with good cause, the Court GRANTS the H2R Defendants' motion as to Interrogatory Nos. 17, 18, 47 & 48 and RFA No. 44 as well as Trinity's motion as to Interrogatory Nos. 17 & 18 and RFA Nos. 10 & 11.

IV.   Defendants must answer any relevant questions that are not abusive on

<u>their face.</u>

In the remaining requests, Ms. Carter asks the H2R Defendants about whether they contributed to Parkland Hospital (Interrogatory No. 31) or paid the EMTs to not complete an EMT report (Interrogatory No. 37). She also asks Trinity whether it "shared Plaintiff's personal information to the Collin County Rape Crisis Center" (RFA No. 14), whether it is "aware that the Collin County Rape Crisis Center raised money from its contributors for the injury of Plaintiff and used it for their organizational purposes" (RFA No. 15), whether it "thought this entire matter would go away" (RFA No. 17), whether "Plaintiff was the only black female and black person hired as a Chef and [d]emoted to cook on October 20, 2012" (RFA No. 18), and whether "Defendants plan to harm Plaintiff or have her harmed in any way to prevent her from pursuing this litigation" (RFA No. 25).

As stated, the party resisting discovery must show specifically how each request is not relevant or otherwise objectionable. *See In re Terra Int'l*, 134 F.3d at 306 (citations omitted) ("[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.").

Defendants do not contend that these specific requests are not relevant to this action. And the Court will not question the relevance of these requests when, unlike the requests in Section II, there may be colorable arguments as to their relevance. With the exception of RFA No. 25, each of the requests above potentially help Ms. Carter establish the facts that occurred on the night of the explosion, the consequences

she experienced as a result, or both. And RFA No. 25 would help Ms. Carter potentially pursue a theory that Defendants violated Title VII by retaliating against her.

Further, unlike the requests discussed in Section III, these requests are not abusive on their face. And, as Ms. Carter correctly notes, Defendants have "not attempt[ed] to establish detailed reasons" as to why her requests are improper. *See* Dkt. No. 177 at 4. Accordingly, Defendants have failed to meet their burden to establish the reasons why they should not have to comply with Defendants' requests.

For these reasons, the Court DENIES the H2R Defendants' motion as to Interrogatory Nos. 31 & 37 and Trinity's motion as to RFA Nos. 14, 15, 17, 18 & 25.

V.     <u>The H2R Defendants' request for sanctions is denied.</u>

Under Rules 26(c)(3) and 37(a)(5), if a motion for protective order is granted in part and denied in part, the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses to the motion." FED. R. CIV. P. 26(c)(3), 37(a)(5).

The H2R Defendants argue that Ms. Carter should be sanctioned because she either knew or should have known that issuing over 25 interrogatories violates the Amended Scheduling Order and because the requests in question are highly abusive.

The Court disagrees that Ms. Carter necessarily violated the Amended Scheduling Order's 25 interrogatory limit for the reasons discussed. As previously explained, the Court only orders Ms. Carter to re-issue her interrogatories because, as served, it was not entirely clear which 25 interrogatories she wanted each particular party to answer.

But the Court agrees that several of Plaintiff's discovery requests are highly

18

objectionable on their face. *See, e.g.,* 166-1 at 6 ("My Dyess, did you torture animals as a child?"). The Court also finds Ms. Carter to be the party whose conduct contributed more to the filing of these motions.

The Court shall nevertheless refrain from sanctioning Ms. Carter under Rules 26(c)(3) and 37(a)(5) – at least for now. Rule 37(a)(5) explains that, even where a motion for protective order is granted in full, the Court is not authorized to award attorneys' fees for the cost of the motion if "other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5).

Such circumstances exist here. Even assuming that Ms. Carter could pay if sanctioned, as the United States Court of Appeals for the Fifth Circuit has explained, "[p]ro se litigants are not held to the standards of professionals." *Clark v. Green*, 814 F.2d 221, 223 (5th Cir. 1987). The Court is consequently "cautious in imposing sanctions against a pro se litigant, especially in the absence of a prior warning." *Seal Parts v. National Parts System*, 48 F.3d 529, 529 (5th Cir. 1995) (citing *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988), *cert. denies*, 488 U.S. 985 (1988)). The Court has not previously warned Ms. Carter that her discovery requests may be abusive and potentially subject her to sanctions. She has now been warned.

Accordingly, the Court ORDERS that, considering all of the circumstances here and the Court's rulings above, the parties will bear their own expenses, including attorneys' fees, in connection with Defendants John Dyess, H2R Restaurant Holdings, LLC, and Chris Short's Amended/Corrected Motion for Protective Order [Dkt. No. 171], Defendant Trinity Event Staffing's Motion for Protective Order [Dkt. No. 174], and

19

Plaintiff's Motions to Compel [Dkt. Nos. 176 & 177].

VI.     <u>Plaintiff's motion to compel is denied as premature.</u>

Finally, the Court DENIES – without prejudice (other than as to the discovery requests on which the Court is granting a protective order) – Plaintiff's motions to compel Defendants to respond to her requests as premature. Defendants were not required to respond to Ms. Carter's requests while their motions for protective order were pending.

### Conclusion

For the reasons and to the extent explained above, the Court GRANTS IN PART and DENIES IN PART Defendants John Dyess, H2R Restaurant Holdings, LLC, and Chris Short's Amended/Corrected Motion for Protective Order [Dkt. No. 171] and Defendant Trinity Event Staffing's Motion for Protective Order [Dkt. No. 174] and DENIES Plaintiff's Motions to Compel. *See* Dkt. Nos. 176 & 177. In particular:

1.      The Court GRANTS the H2R Defendants' Motion for Protective Order as to Interrogatory No. 17, 18, 25, 47, 48 & 61 and RFA Nos. 12, 29, 32 & 44.

2.      The Court GRANTS Trinity's Motion for Protective Order as to Interrogatory Nos. 17, 18 & 25 and RFA Nos. 10, 11, 12 & 13.

3.      The Court DENIES the H2R Defendants' Motion for Protective Order as to Interrogatory Nos. 31 & 37.

4.      The Court DENIES Trinity's Motion for Protective Order as to RFA Nos. 14, 15 17, 18 & 25.

The Court also ORDERS that:

1. Ms. Carter must, by **June 13, 2017**, re-issue her interrogatory requests to the H2R Defendants so that each party can clearly delineate which 25 questions it is required to answer.

2. The H2R Defendants must, by **June 20, 2017**, respond to Ms. Carter's newly issued interrogatory requests and any remaining discovery requests they have not answered while this motion was pending.

3. Defendant Trinity must, by **June 20, 2017**, respond to any discovery requests it has not answered while this motion was pending.

4. The parties will bear their own expenses, including attorneys' fees, in connection with the motions now ruled upon.

SO ORDERED.

DATED: June 6, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE