IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SAMANTHA CARTER,                    §
                                    §
            Plaintiff,              §
                                    §
V.                                  §          No. 3:16-cv-1554-N-BN
                                    §
H2R RESTAURANT HOLDINGS, LLC,       §
ET AL.,                             §
                                    §
            Defendants.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial

management under 28 U.S.C. § 636(b) and a standing order of reference from United

States District Judge David C. Godbey. *See* Dkt. No. 102.

Defendants H2R Restaurant Holdings, LLC ("H2R"), Chris Short, and John

Dyess have filed a Motion to Enforce Settlement Agreement (the "Motion to Enforce")*,

see* Dkt. No. 310, and a Motion to Dismiss Subject to Motion to Enforce Settlement

Agreement, *see* Dkt. No. 311. Defendant RAD Staffing, LLC d/b/a Trinity Event

Staffing ("Trinity") has filed a Motion to Dismiss Under Fed. R. Civ. P. 41(b) (the

"Motion to Dismiss"). *See* Dkt. No. 313.

Plaintiff Samantha Carter filed a response, *see* Dkt. No. 315, and, on February

23, 2018, the undersigned held an evidentiary hearing on all three motions, at which

Ms. Carter and counsel for all defendants appeared, *see* Dkt. No. 319.

For the reasons and to the extent explained below, the undersigned concludes

that H2R, Dyess, and Short's Motion to Enforce Settlement Agreement [Dkt. No. 310] should be granted; H2R, Dyess, and Short's Motion to Dismiss Subject to Motion to Enforce Settlement Agreement [Dkt. No. 310] should be denied as moot; and Trinity's Motion to Dismiss Under Fed. R. Civ. P. 41(b) [Dkt. No. 313] should be denied.

## Background

The undersigned discussed some of the relevant background in the Findings, Conclusions, and Recommendation dated January 11, 2018 and will repeat the pertinent facts here.

On October 4, 2017, the Court ordered Ms. Carter and Trinity to engage in mediation by November 30, 2017 with a mediator of their choice. *See* Dkt. No. 274. And, on October 16, 2017, Trinity and H2R, Dyess, and Short issued two separate notices of mediation, both indicating that they had agreed with Ms. Carter to a November 8, 2017 mediation date. *See* Dkt. Nos. 281 & 285.

Shortly thereafter, Trinity noticed Ms. Carter's deposition for November 9, 2017. *See* Dkt. No. 287. But, based on the Court's concerns that setting Ms. Carter's deposition for the day after the mediation may create an unhelpful dynamic at the mediation, the Court quashed Trinity's notice for Ms. Carter's deposition. *See* Dkt. No. 291. The Court indicated that, if the case did not settle at the scheduled mediation, the Court would convene a telephone conference with Defendants' counsel and Ms. Carter to coordinate a date and logistics for Ms. Carter's deposition. *See id.*

On November 8, 2017, Ms. Carter and Defendants Trinity, H2R, Dyess, and Short engaged in mediation. Ms. Carter filed a Notice of Mediation Results indicating

that she had settled her claims with H2R, Dyess, and Short for $1,200,000.00 but that she did not settle her claims with Trinity. *See* Dkt. 293.

As the only defendant anticipated to remain in the case, Trinity then sought to take Ms. Carter's deposition. And, indicating that Ms. Carter had refused to provide available dates, Trinity asked the Court to convene a telephone conference. *See* Dkt. No. 294.

On November 28, 2017, the Court held a telephone conference, confirming that Ms. Carter had settled with Defendants H2R, Dyess, and Short and facilitating a discussion between Ms. Carter and Trinity regarding Ms. Carter's deposition. Ms. Carter agreed to be deposed in Dallas on January 15, 2018.

After the telephone conference, Trinity filed its Notice of Oral/Videotaped Deposition formally setting Ms. Carter's deposition as agreed, *see* Dkt. No. 299, and H2R, Dyess, and Short filed Defendants' First Amended Agreed Motion for Partial Dismissal with Prejudice (the "Motion for Partial Dismissal"), indicating that they had settled with Ms. Carter at mediation and that they and Ms. Carter agreed that Ms. Carter's claims against H2R, Dyess, and Short should be dismissed with prejudice, *see* Dkt. No. 300 at 1. The Motion for Partial Dismissal is electronically signed by Ms. Carter and by counsel for H2R, Dyess, and Short. *See id.* at 2.

Ms. Carter then filed a Notice to the Courts Before Ordered Partial Dismissal and Request for Video/Distance Deposition (her "Notice"), asking the Court to permit Ms. Carter to appear by video at her January 15 deposition and raising her concerns with the Motion for Partial Dismissal. *See* Dkt. No. 301. The Court denied Ms. Carter's

request to have her deposition taken remotely by video. *See* Dkt. No. 302.

As to the part of Ms. Carter's Notice concerning the Motion for Partial Dismissal,

Ms. Carter explains to the Court her concerns related to her settlement with H2R, Dyess, and Short (collectively, "Defendants," not to include Trinity Event Staffing). First, Ms. Carter asserts that "Defendants H2R Restaurant Holdings, LLC, John Dyess, and Chris Short manipulated the page[] numbers at the bottom of the settlement agreement," and that, although Ms. Carter has requested a complete settlement agreement copy, "Defendants have ignored Plaintiff's request." Dkt. No. 301 at 1.

Second, Ms. Carter raises issue with how the settlement money was distributed, explaining that the funds were disbursed contrary to her understanding of the settlement agreement. *See id.* at 1-3. In particular, Ms. Carter expresses her concern that "most of Plaintiff's compensation came from the excess policy," and that "[a]lmost 60 percent of the primary policy went to a state case lawyer" – who, Ms. Carter maintains, "was compensated almost two months ago" – "and [to] unknown persons that ha[ve] nothing to do with this federal case." *Id.* at 1. Ms. Carter further explains that "the defendants are making Plaintiff compensate the federal case lawyer from her personal injury case." *Id.* at 4.

Third, Ms. Carter identifies problems with the settlement agreement and the mediation that prompted the parties to settle, stating that "[t]he Receiver and Attorneys in the state case appeared to have negotiated the federal case compensation of what was supposed to be an impartial and good faith mediation in the federal case" and explaining her dissatisfaction with the mediator who conducted the settlement conference. *Id.* at 3. Ms. Carter explains that she feels that "this entire matter was premeditated" and that Defendants did not participate in the mediation in good faith, and Ms. Carter states that "the settlement agreement should almost be negated with discovery which appears to determine that the defendants had outwitted the Plaintiff entirely before mediation began." *Id.* at 3.

Based on these concerns and others described in her Notice, Ms. Carter asks that, "before the [C]ourt[] orders a dismissal[,] please bear in mind that Plaintiff Carter thought that she was signing a settlement agreement in integrity and not being bamboozled." *Id.* at 2.

Dkt. No. 303 at 2-4.

But, because Ms. Carter's Notice was unclear as to whether Ms. Carter was

asking the Court to deny the Motion for Partial Dismissal – to which Ms. Carter had

agreed as reflected by her signing the motion – the Court ordered Ms. Carter to explain what effect she wished her Notice to have. *See id.* at 3-4.

Ms. Carter then filed her Opposition to Motion to Dismiss and Answer to the Court, making clear that she did, in fact, oppose the Motion for Partial Dismissal. *see* Dkt. No. 304. After H2R, Dyess, and Short filed a response and Ms. Carter filed a reply, the undersigned recommended denying the Motion for Partial Dismissal under Federal Rule of Civil Procedure 41(a)(2) because, given Ms. Carter's opposition, the dismissal was no longer at her request under Rule 41(a)(2). *See* Dkt. No. 308. The Court has since accepted the undersigned's Findings, Conclusions, and Recommendation and denied the Motion for Partial Dismissal. *See* Dkt No. 320.

After the undersigned recommended denying the Motion for Partial Dismissal, signaling that H2R, Dyess, and Short, like Trinity, would remain in the case for the time being, H2R, Dyess, and Short filed their Cross-Notice to Take the Oral and Videotaped Deposition of Plaintiff at the deposition that Trinity had already noticed for January 15, 2018. *See* Dkt. No. 309.

H2R, Dyess, and Short also filed their Motion to Enforce, explaining that, under the settlement agreement, Ms. Carter agreed to release H2R, Dyess, and Short in exchange for $1,200,000.00 and arguing that the Court should enforce the settlement agreement because they had paid Ms. Carter in full. *See* Dkt. No. 310.

On January 15, 2018, Ms. Carter failed to appear for her noticed deposition. H2R, Dyess, and Short filed their Motion to Dismiss Subject to Motion to Enforce

Settlement Agreement, asking the Court to dismiss Ms. Carter's lawsuit in its entirety based on her failure to appear for her deposition and to impose sanctions on Ms. Carter for the same reason. *See* Dkt. No. 311. And Trinity filed its Motion to Dismiss, also asking the Court to dismiss Ms. Carter's case and impose sanctions. *See* Dkt. No. 313.

Ms. Carter filed a single response addressing H2R, Dyess, and Short's Motion to Enforce and Motion to Dismiss Subject to Motion to Enforce Settlement Agreement and Trinity's Motion to Dismiss. In response to the Motion to Enforce, Ms. Carter argues that the Court should not enforce the settlement agreement because, although the settlement agreement that H2R, Dyess, and Short provided to Ms. Carter and to the Court contains only four pages, the document footer references a total of forty-four pages. And, as in her Notice, Ms. Carter argued at the evidentiary hearing on the Motion to Enforce that the Court should not enforce the settlement agreement because the mediation was unfair.

In response to both motions to dismiss, Ms. Carter argues that she did not attend her own deposition because (1) Trinity violated a Court order by giving H2R, Dyess, and Short permission to attend the deposition without first communicating that to Ms. Carter or the Court; (2) Ms. Carter "was a few hours from being stuck in a snow storm that ... caused [Ms. Carter] to be concerned about her safety when traveling," *see* Dkt. No. 315 at 2; (3) counsel for H2R, Dyess, and Short stated that Ms. Carter's deposition would be however-long necessary for completion, but Ms. Carter was "not prepared for a few days deposition" in Dallas, especially in light of "all these changes"; and (4) "a video deposition was in the best interest of [Ms. Carter]," but the Court had

6

denied her request for one, *id.* at 3.

## Legal Standards

I.    <u>Motion to Enforce Settlement Agreement</u>

The Court "has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties" in the case before the Court. *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994); *accord Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) ("A District Court has the power to enforce summarily a settlement agreement reached in a case pending before it.").

Whereas "the enforceability of a settlement agreement in a diversity case tried in a federal district court in Texas is governed by the provisions of Rule 11, Texas Rules of Civil Procedure ('Texas Rule 11')," *Borden v. Banacom Mfg. and Mktg., Inc.*, 698 F. Supp. 121, 123 (N.D. Tex. 1988) (citing *Anderegg v. High Standard, Inc.*, 825 F.2d 77, 80-81 (5th Cir. 1987)), the validity and enforcement of settlement agreements regarding federal claims is reviewed under federal law, *see Mid-South*, 733 F.2d at 389 (explaining that federal law determines whether a settlement agreement is enforceable or valid "where the substantive rights and liabilities of the parties derive from federal law"); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981).

Here, Ms. Carter has brought claims based on both state and federal law. Although H2R, Dyess, and Short apply Texas law in their Motion to Enforce, the undersigned applies federal law here, where the settlement agreement disposes of Title VII claims. *See Fulgence*, 662 F.2d at 1209. But the undersigned notes that, because

the agreement here complies with Texas Rule 11, *see Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 712 (N.D. Tex. 2013) (finding Texas Rule 11's requirements satisfied where the agreement was signed, in writing, and filed with the court in a motion to enforce the agreement), the result under Texas law would be the same.

Under federal law, agreements to settle federal claims must be entered into voluntarily and knowingly. *See Fulgence*, 662 F.2d at 1209. And "[o]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity." *Mid-South*, 733 F.2d at 392 (quoting *Callen v. Pa. R.R. Co.*, 332 U.S. 625, 630 (1948)). "Where a party has knowingly and voluntarily agreed to settle his claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement." *Bell*, 36 F.3d at 449.

But the party opposing enforcement of the settlement based on a challenge to the validity of the agreement must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement. *See Mid-South*, 733 F.2d at 390 ("Although a district court has inherent power to enforce an agreement to settle a case pending before it *summarily*, when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement." (emphasis in original)). And "[t]his central issue – whether there was any disputed issue of material fact as to the validity of the

settlement agreement[] – is similar to that which any court must address when ruling on a motion for summary judgment." *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015) (internal quotation marks omitted).

On the other hand, where no dispute of fact as to the validity or scope of a settlement agreement is shown, the Court may properly summarily enforce the parties' preexisting agreement. *See Ochoa-Bunsow v. C.I.R.*, 623 F. App'x 226, 227 (5th Cir. 2015); *accord In re Deepwater Horizon*, 786 F.3d at 354 (explaining that "[a] district court may summarily enforce a settlement agreement if no material facts are in dispute" (footnote omitted)).

Under federal law, settlement agreements are contracts. *See Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). A binding settlement "agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Lopez v. Kempthorne*, Civ. A. No. H-07-1534, 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010). "An offer is judged by the parties' overt acts and words, not by the subjective or secret intent of the offeror." *In re Deepwater Horizon*, 786 F.3d at 355 (footnote omitted).

"The federal law of contracts 'uses the core principles of the common law of contracts that are in force in most states." *Lopez*, 2010 WL 4639046, at *4 (quoting *Smith v. United States*, 328 F.3d 760, 767 n.8 (5th Cir. 2003) (per curiam)). And because "the federal common law of release is largely undeveloped and federal contract law is largely indistinguishable from general contract principles under state common

9

law," the Court may rely on federal cases, state contract law cases, and other treatises to the extent it finds them persuasive. *In re Deepwater Horizon*, 786 F.3d at 354-55 (internal quotation marks and footnotes omitted).

II.    <u>Motion to Dismiss Under Fed. R. Civ. P. 41(b)</u>

Rule 41(b) governs the involuntary dismissal of actions and provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits.

FED. R. CIV. P. 41(b).

A Rule 41(b) dismissal constitutes an adjudication on the merits unless the Court specifically orders otherwise. *See id.* And the United States Supreme Court has interpreted "adjudication on the merits" under Rule 41(b) to mean "the opposite of a 'dismissal without prejudice.'" *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (referencing 18 WRIGHT & MILLER § 4435, at 329, n. 4 ("Both parts of Rule 41 ... use the phrase 'without prejudice' as a contrast to adjudication on the merits"); 9 *id.*, § 2373, at 396, n. 4 ("'[W]ith prejudice' is an acceptable form of shorthand for 'an adjudication upon the merits'").

But, even if the Court orders a Rule 41(b) dismissal as explicitly without prejudice, the United States Court of Appeals for the Fifth Circuit has treated a dismissal without prejudice as a dismissal with prejudice where, as here, the applicable statutes of limitations probably bar future litigation. *See Nottingham v.*

*Warden, Bill Clements Unit*, 837 F.3d 438, 441 (5th Cir. 2016). *See generally* 42 U.S.C.

§ 2000e-5 (setting the limitations period for civil Title VII actions); TEX. CIV. PRAC. &

REM. § 16.003(a) (setting a two-year limitations period for personal injury claims).

The Fifth Circuit has made clear that

> [l]esser sanctions such as fines or dismissal without prejudice are usually appropriate before dismissing with prejudice, *Long v. Simmons*, 77 F.3d 878, 880 (5th Cir.1996), but a Rule 41(b) dismissal is appropriate where there is a "clear record of delay or contumacious conduct by the plaintiff, ..., and when lesser sanctions would not serve the best interests of justice." *Callip v. Harris County Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir.1985). Where this court has affirmed 41(b) dismissals, it has usually found one or more of the following aggravating factors: "(1) delay attributable to the plaintiff, not to his attorney, (2) actual prejudice to the defendant; and (3) delay caused by intentional misconduct." *Id.*

*Bryson v. United States*, 553 F.3d 402, 403-04 (5th Cir. 2008) (per curiam).

Dismissal with prejudice is "appropriate only if its deterrent value cannot be

substantially achieved by use of less drastic sanctions." *Brinkmann v. Dallas Cnty.*

*Deputy Sheriff Abner*, 813 F.2d 744, 749 (5th Cir. 1987).

And, as to the plaintiff's delay or contumacious conduct, "it is not a party's

negligence – regardless of how careless, inconsiderate, or understandably exasperating

– that makes conduct contumacious; instead, it is 'the stubborn resistance to authority'

which justifies a dismissal with prejudice." *McNeal v. Papasan*, 842 F.2d 787, 792 (5th

Cir. 1988). Generally, a party's failure to comply with several court orders will

establish contumacious conduct. *See Price v. McGlathery*, 792 F.2d 472, 474-75 (5th

Cir.1986) (clear record of delay and contumacious conduct where counsel failed to file

pretrial order, failed to appear at a pretrial conference, and failed for almost a year to

certify that he would comply with the district court's order); *Callip v. Harris Cnty. Child Welfare Dept.*, 757 F.2d 1513, 1515-17, 1521 (5th Cir.1985) (clear record of delay or contumacious conduct where counsel failed to comply with nine deadlines imposed by the rules of procedure or by orders of the court); *Kabbe v. Rotan Mosle, Inc.*, 752 F.2d 1083, 1084 (5th Cir.1985) (dismissed with prejudice appropriate where plaintiff failed to appear for three depositions); *Anthony v. Marion Cnty. Gen. Hosp.*, 617 F.2d 1164 (5th Cir.1980) (dismissal properly imposed when plaintiff herself failed to appear at two hearings and one deposition); *Hepperle v. Johnston*, 590 F.2d 609 (5th Cir.1979) (dismissal with prejudice appropriate after plaintiff himself failed to appear for a deposition on four separate occasions).

But a party's violating a few court orders or rules may not rise to the level of contumacious conduct required for a Rule 41(b) dismissal with prejudice. *See Morris v. Ocean Sys.*, 730 F.2d 248, 252 (5th Cir. 1984) (no clear record of delay or contumacious conduct where counsel failed twice to comply with court-imposed deadlines requiring counsel to notify court of plaintiff's rejection of settlement offers); *Burden v. Yates*, 644 F.2d 503, 504–05 (5th Cir. 1981) (no clear record of delay or contumacious conduct where counsel failed to file three documents on time); *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 556–58 (5th Cir. 1981) (no clear record of delay or contumacious conduct where counsel failed to comply with scheduling and other pretrial orders); *Silas v. Sears, Roebuck & Co.*, 586 F.2d 382, 384–85 (5th Cir. 1978) (no clear record of delay or contumacious conduct where counsel failed to answer

interrogatories, failed to confer with defendant on pretrial order, and failed to appear at a pretrial conference).

And "most courts affirming dismissals have found at least one of three aggravating factors: (1) delay caused by plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." *Price*, 792 F.2d at 474 (citing *Callip*, 757 F.2d at 1519). "The presence of one aggravating factor, along with the record of delay or contumacious conduct and consideration of lesser sanctions, will support a dismissal with prejudice." *Id.* at 475 (citing *Callip*, 757 F.2d at 1519).

## Analysis

### I.   <u>Defendants H2R, Dyess, and Short's Motion to Enforce should be granted.</u>

Defendants H2R, Dyess, and Short's Motion to Enforce should be granted because Ms. Carter not met her burden of proving that the Settlement Agreement is unenforceable.

Under federal law, "a binding settlement 'agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance.'" *Chen v. Highland Capital Mgmt., L.P.*, No. 3:10-cv-1039-D, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012) (quoting *Lopez*, 2010 WL 4639046, at *4). And, "[w]here a party has knowingly and voluntarily agreed to settle [her] claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement." *Weaver v. World Fin. Corp. of Tex.*, No. 3:09-cv-1124-G, 2010

13

WL 1904561, at *2 (N.D. Tex. May 12, 2010) (citing *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994)).

Here, Ms. Carter does not dispute that there was mutual assent and presents no changed circumstances that support her repudiating the settlement agreement. Ms. Carter's Notice of Mediation Results explains that H2R, Dyess, and Short offered to pay Ms. Carter $1,000,050.00 in settlement, that "[Ms. Carter] counter-offered $1,200,000.000," and that H2R, Dyess, and Short accepted her counter-offer. *See* Dkt. No. 393 at 1. Nor does Ms. Carter dispute that the four-page settlement agreement filed with the Court – which bears her signature – is the same four-page document that she reviewed and signed.

Ms. Carter nonetheless argues that the Court should not enforce the settlement agreement because she did not knowingly and voluntarily settle her claims. Ms. Carter makes three main contentions in support of her position: (1) the settlement agreement contains forty additional pages that H2R, Dyess, and Short have allegedly concealed from Ms. Carter; (2) H2R, Dyess, and Short paid lawyers from her state court case without her knowledge; and (3) the mediation that led to her signing the settlement agreement was unfair.

First, Ms. Carter's argument that the settlement agreement contains forty-four total pages – instead of just the four pages that she signed and were submitted to the Court – is unconvincing. Ms. Carter bases her contention on the settlement agreement's footer, which reads "Page 4 of 44" on each of the agreement's four pages. But, in the evidentiary hearing, counsel for H2R, Dyess, and Short confirmed that the

four-page agreement signed by Ms. Carter and filed with the Court constitutes the entire settlement agreement. And H2R, Dyess, and Short offered a simple explanation for the incorrect page numbers: there was an error with the printers at the mediation venue.

Second, Ms. Carter's assertion that the settlement agreement is invalid because H2R, Dyess, and Short have paid lawyers from Ms. Carter's state court case without her knowledge also fails to persuade. Ms. Carter does not deny that H2R, Dyess, and Short paid Ms. Carter the full $1,200,000.00 that she was owed under the settlement agreement. Ms. Carter takes issue with the fact that, in addition to paying Ms. Carter the $1,200,000.00 settlement, H2R, Dyess, and Short had paid lawyers from her state court case. But that state court case is disconnected from the federal case that is before this Court and the claims against H2R, Dyess, and Short that Ms. Carter agreed to release. The Court should not invalidate an otherwise valid settlement of Ms. Carter's federal-case claims merely because Ms. Carter is dissatisfied with events pertaining to claims that were before a different court in a different case.

Third, Ms. Carter's contention that the settlement agreement is invalid because the mediation was unfair is unsupported by the evidence. Ms. Carter argues in her Notice that the mediation was unfair because the mediator was discouraging and knew one of Trinity's attorneys prior to the mediation. *See* Dkt. No. 301 at 3 of 6. Ms. Carter raised many of these arguments again at the evidentiary hearing and further argued that she signed the settlement agreement because she was coerced and under duress.

But Ms. Carter has offered insufficient evidence to prove that she was coerced

15

or under duress when she entered the settlement agreement with H2R, Dyess, and Short. The mediator's disagreement with Ms. Carter's settlement demands, which, according to Ms. Carter, the mediator appeared to believe were too high to prompt settlement based on his experience, *see id.* (explaining that the mediator told Ms. Carter during the mediation that he had handled the largest burn case in Texas's history and that Ms. Carter's case had little value), does not establish that the mediator coerced Ms. Carter into settling.

To the contrary, Ms. Carter's Notice of Mediation Results indicates that the settlement amount was determined by Ms. Carter's own counter-offer of $1,200,000.00 and that Ms. Carter signed the settlement agreement – not because she was coerced or under duress – but out of a desire to move on with her life. *See* Dkt. No. 293 at 1 ("Plaintiff counter-offered $1,200,000.00 *just to bring closure* in this case although it was a pure compromise ...." (emphasis in original)). Ms. Carter's filings and statements at the evidentiary hearing make clear that she was an active participant in the negotiation process – rejecting offers, proposing counter offers, and "inform[ing] and re-explain[ing] to the mediator" the facts of the case – that Ms. Carter was fully aware of the terms of the settlement agreement, and that Ms. Carter merely wanted to settle her claims and get on with her life.

Because Ms. Carter has not met her burden in proving that the settlement agreement is invalid, *see Mid-South Towing*, 733 F.2d at 392, the undersigned concludes that the Court should grant H2R, Dyess, and Short's Motion to Enforce. And, because H2R, Dyess, and Short filed their Motion to Dismiss as an alternative to their

Motion to Enforce, the Court should deny H2R, Short, and Dyess's Motion to Dismiss Subject to Enforce Settlement Agreement as moot.

II.    <u>Defendant Trinity's Motion to Dismiss should be denied.</u>

Defendant Trinity's Motion to Dismiss should be denied because less severe sanctions would better serve the interests of justice.

In its Motion to Dismiss, Trinity moves to dismiss Ms. Carter's case under Rule 41(b) as an "adjudication on the merits," Dkt. No. 313 at 6 of 15, and asks the Court to impose other "appropriate" sanctions against Ms. Carter under Federal Rules of Civil Procedure 37(b)(2)(A) and 37(d), *id.* at 1 of 15.

Trinity argues that Ms. Carter violated Rule 41(b) and Rule 37(b)(2)(A) because, in failing to attend her deposition in violation of Rule 37(d), Ms. Carter violated the Court's electronic order that denied Ms. Carter's request for a remote deposition:

> Plaintiff Samantha Carter's request to have her deposition taken remotely by video 301 is DENIED. Depositions are presumptively conducted in person. Federal Rule of Civil Procedure 30(b)(4) provides that "[t]he parties may stipulate – or the court may on motion order – that a deposition be taken by telephone or other remote means." The parties have not agreed to a video deposition, and this Court has repeatedly ordered, after quashing previously served notices to take Ms. Carter's deposition while she would otherwise be in Dallas, that Ms. Carter will appear for her deposition in Dallas. Ms. Carter must appear as agreed and as noticed for her deposition on January 15, 2018 at 1:00 p.m. at Walters, Balido & Crain, Meadow Park Tower, 10440 North Central Expressway, Suite 1500, Dallas, Texas 75231. The parties are warned that failure to appear as noticed or to otherwise comply with the Court's orders may result in sanctions. See Fed. R. Civ. P. 37(b), 37(d), 41(b).

Dkt. No. 302.

The undersigned concludes that Rule 41(b) dismissal is inappropriate here

17

because the deterrent value of dismissal can be achieved by the Court's imposing less drastic sanctions.

As explained above, a Rule 41(b) dismissal with prejudice generally is appropriate only if (1) lesser sanctions would not serve the best interests of justice; (2) there is a clear record of delay or contumacious conduct by the plaintiff; and (3) one of three aggravating factors is present. *See Bryson*, 553 F.3d at 403-04.

The undersigned cannot conclude that sanctions other than dismissal would not serve the best interests of justice in this case for three reasons. First, the Court's electronic order quoted above required Ms. Carter to appear for her deposition "as noticed," and, at the time of the electronic order, only Trinity had noticed Ms. Carter's deposition. H2R, Dyess, and Short did not file its cross-notice to join the deposition until four days before the deposition was scheduled to occur. And, at the evidentiary hearing, Ms. Carter expressed a genuine misunderstanding of H2R, Dyess, and Short's ability to join the deposition at late notice.

Second, because Ms. Carter has not been previously sanctioned in this case, there is little to no basis for concluding that sanctions other than dismissal would not effectively motivate Ms. Carter to comply with future Court orders.

And third, although Ms. Carter has consistently sought to avoid being deposed in person, she expressed a clear willingness during the evidentiary hearing to sit for her deposition in Dallas.

As to Trinity's request that the Court impose Rule 37(b)(2)(A) and Rule 37(d) sanctions on Ms. Carter, the undersigned concludes that the Court should deny

Trinity's request for sanctions but should order Ms. Carter to sit for her deposition or else risk dismissal.

Rule 37(b)(2)(A) governs sanctions for a party's disobeying a discovery order and establishes that "[i]f a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders," which include, among other possibilities, dismissing the action in whole or in part. FED. R. CIV. P. 37(b)(2)(A).

And Rule 37(d) punishes a party's failure to attend its own deposition, providing that "[t]he court where the action is pending may, on motion, order sanctions if ... a party ... fails, after being served with proper notice, to appear for that person's deposition." FED. R. CIV. P. 37(d). Sanctions for a Rule 37(d) violation may include any of the orders listed under Rule 37(b)(2)(A), but

> [i]nstead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

*Id.*

Although Trinity makes no argument in favor of such an award in its Motion to Dismiss, Rule 37(d) requires Ms. Carter to pay Trinity's reasonable expenses, including attorneys' fees, caused by her failure to attend her deposition, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* And the circumstances here weigh against requiring Ms. Carter to pay Trinity's deposition expenses. As explained above, at the time the Court ordered Ms. Carter to

19

appear for her deposition "as noticed," H2R, Dyess, and Short had not yet cross-noticed Ms. Carter's deposition, and, at the evidentiary hearing, Ms. Carter indicated a desire to appear at a rescheduled deposition. Given Ms. Carter's justifiable misunderstanding of whether the Court's order permitted H2R, Dyess, and Short to attend the deposition, Ms. Carter's stated willingness to rectify her error by sitting for a rescheduled deposition, and Ms. Carter's *pro se* status, the Court should not order Ms. Carter under Rule 37(d) to pay Trinity's reasonable expenses.

As to other optional sanctions, the undersigned has concluded for the reasons above that dismissal is improper here. And none of the alternative possibilities listed in Rule 37(b)(2)(A) would appropriately remedy Trinity's lost opportunity to depose Ms. Carter and further develop its defenses to her various claims.

The undersigned concludes that the Court should instead "issue further just orders," FED. R. CIV. P. 37(b)(2)(A), and require Ms. Carter to appear for an in-person deposition with Trinity in Dallas on a mutually-agreeable date that is no later than four weeks from the date of any order accepting these findings, conclusions, and recommendation.

## Recommendation

For the reasons discussed above, Defendants H2R Restaurant Holdings, LLC, Chris Short, and John Dyess's Motion to Enforce Settlement Agreement [Dkt. No. 310] should be granted; Defendants H2R Restaurant Holdings, LLC, Chris Short, and John Dyess's Motion to Dismiss Subject to Motion to Enforce Settlement Agreement [Dkt. No. 311] should be denied as moot; and Defendant RAD Staffing, LLC d/b/a Trinity

20

Event Staffing's Motion to Dismiss Under Fed. R. Civ. P. 41(b) [Dkt. No. 313] should be denied. The Court should order Ms. Carter to appear for an in-person deposition with Trinity in Dallas on a mutually-agreeable date that is no later than four weeks from the date of any order accepting these findings, conclusions, and recommendation.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 15, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

21